UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER WALKER,<br><br>                    Plaintiff,<br><br>         v.<br><br>DANIEL L. BARNETT, et al.,<br><br>                    Defendants. | CASE NO. C23-0163-KKE<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT |

This matter comes before the Court on Plaintiff Christopher Walker's motion for leave to amend his complaint. Dkt. No. 31. The Court has considered the parties' briefing and the balance of the record, and heard the oral argument of counsel. For the reasons explained herein, the Court denies the motion.

### I.   BACKGROUND[1]

In 2011 Defendant Daniel Barnett asked his longtime friend Walker to loan him money to help him finance his business, Defendant Aviara Capital Partners LLC ("Aviara"). Walker withdrew money from his personal 401K account and liquidated other assets to finance a $150,000 loan. Walker and Barnett signed a promissory note in September 2011 ("the first note"), which was secured by a Security Agreement pledging all of Barnett's interest in Aviara to Walker.

---

[1] The facts as stated herein are taken from the Complaint (Dkt. No. 1-1) and assumed to be true for the purposes of this motion.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT - 1

Barnett agreed to begin making interest-only payments in February 2012, with interest accruing at 12% per annum, with the entire balance due in seven years.

Barnett ceased making timely payments after approximately a year, and the first note went into default. Under the terms of the note, upon default the outstanding balance is due immediately, with default interest at 24%. Barnett continued to make sporadic payments, after which Walker updated Barnett as to the total balance owing.

In June 2015, Walker loaned Barnett another $5,000 and entered into another promissory note ("the second note") with Barnett and Barnett's company Defendant BE Holdings, LLC. Walker agreed, via the second note, to consider reversing the 24% compound interest on the first note if Barnett and BE Holdings timely: (1) paid back the second note, (2) paid off the outstanding accrued interest on the first note, (3) returned to making timely monthly payments on the first note, and (4) paid off the entire first note within one year of signing the second note. Barnett satisfied the first requirement, but did not satisfy the other three. Thus, the first note remained in default, and Barnett and BE Holdings continued to make sporadic payments on it.

In a February 2021 text message from Barnett to Walker, Barnett offered to pledge his equity in Defendant Health Professionals Alliance ("HPA") to satisfy his obligation on the first note. Barnett told Walker that Barnett and HPA would create an entity referred to as 20% Plus to raise $1 million collateralized by HPA shares held by BE Holdings. Barnett and HPA's board chair Roy Rose agreed that 20% Plus would receive 42.5% of all monies raised, and that these proceeds would be used to pay the outstanding balance on the first note. Barnett/BE Holdings and HPA officers successfully raised money through 20% Plus, but did not use the money to completely repay Walker on the first note. Only some of the money raised was paid to Walker, and the remainder of the money raised was paid to BE Holdings.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT - 2

In August 2021, Walker asked Barnett again to repay the money owed on the first note, but Barnett offered various explanations as to why he could not. As of December 1, 2022, Walker claims that Barnett owes Walker $1,406,427 plus attorney fees under the first note.

Walker filed a lawsuit against Barnett, Aviara, BE Capital Partners (an LLC owned by Barnett), BE Holdings, Barnett's wife Sheri Barnett, and HPA in January 2023 in King County Superior Court, and the Defendants other than HPA (hereinafter "the Barnett Defendants") removed to this Court the following month. *See* Dkt. No. 1. HPA filed a motion for judgment on the pleadings in December 2023. Dkt. No. 30.

Days after that motion was filed, Walker moved for leave to amend his complaint.[2] Dkt. No. 31. Walker seeks to amend his complaint to, *inter alia*, add 20% Plus and Rose as Defendants; to expand the existing claims and modify them to be brought against different/new Defendants; to add a claim for fraud against Daniel Barnett; and to request that if the terms of the first note are found to be usurious, the Court should reduce the interest rate on the first note to the highest lawful rate. *See* Dkt. No. 31-2. All of the existing Defendants oppose this motion, and it is now ripe for resolution.

## II.     ANALYSIS

**A. Legal Standards.**

If a court's scheduling order sets forth a deadline for amending the pleadings, no post-deadline amendment is permitted unless the court first finds good cause to amend the case schedule. *See* Federal Rule of Civil Procedure 16(b)(4); *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023). Good cause exists where the moving party is diligent in requesting a modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992).

---

[2] Walker argues that his motion for leave to amend moots HPA's pending motion for judgment on the pleadings. *See* Dkt. No. 35 at 9. The Court need not address this argument in resolving the motion for leave to amend.

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT - 3

"Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion [for leave to amend], the focus of the inquiry is upon the moving party's reasons for seeking modification," and "[i]f that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. "Only after the moving party has demonstrated diligence under Rule 16 does the court apply the standard under Rule 15 to determine whether the amendment [is] proper." *Hood v. Hartford Life & Accident Ins. Co.*, 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008).

> To demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that he was diligent in assisting the court in creating a workable Rule 16 order; (2) that his noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding his diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that he was diligent in seeking amendment of the Rule 16 order, once it became apparent that he could not comply with the order.

*Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (cleaned up).

"To permit a party to disregard a Rule 16 order by an appeal to the standards of Rule 15 would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996) (quoting *Johnson*, 975 F.2d at 610–11). A determination of whether good cause exists to modify a case schedule is committed to the broad discretion of the district court. *See C.F. ex rel. Farman v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011).

B. **Walker Did Not Diligently Seek Amendment.**

As noted *supra*, Walker filed this lawsuit in January 2023, and under the current case schedule, the deadline for joinder of parties was June 13, 2023, and amended pleadings were due July 11, 2023. Dkt. Nos. 1-1, 23. Walker did not file his motion for leave to amend until December

2023, and although he offers a variety of explanations for that timing, none of them suggest diligence.

First, Walker explains that he intentionally delayed seeking amendment until after the parties' November 27, 2023 mediation failed. Walker claims that, as an HPA shareholder, he wanted to avoid bringing damaging claims against HPA that might undermine its fundraising efforts. *See* Dkt. No. 31 at 7–8, 11; Dkt. No. 32 ¶ 14. To that end, Walker states that he believed his proposed additional claims would need to be disclosed to HPA investors, and that he thought that holding back until after the mediation was in the best interest of all of the parties. *See* Dkt. No. 31 at 11; Dkt. No. 32 ¶ 5. But even a genuine intention in this regard does not constitute diligent action in the course of a lawsuit. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (even under Rule 15's liberal standard, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action"). Moreover, to the extent that Walker may have intended to use the threat of amendment as leverage in the mediation (*see, e.g.*, Dkt. No. 31 at 7–8; Dkt. No. 44 ¶ 3), such a course of action would suggest a negotiation strategy rather than diligence.[3] Furthermore, Walker's justification for his delay does not explain why Walker waited to seek amendment until after HPA filed a motion for judgment on the pleadings. *See* Dkt. No. 44 ¶ 6 (indicating that Walker first circulated to opposing counsel the current version of the amended complaint on December 8, 2023, after HPA's motion was filed on December 5).

---

[3] Evidence of a similar negotiation strategy is apparent in the timing of Walker's motion. Walker filed his motion on December 13, 2023, and under this district's local rules, Defendants' opposition was due on December 27, 2023. *See* Dkt. No. 37 at 3–5. When defense counsel notified Walker's counsel that this deadline conflicted with scheduled holiday plans to be away from the office, Walker refused to re-note the motion and suggested HPA should withdraw its motion for judgment on the pleadings and then Walker would re-note his motion for leave to amend. *See id.*

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT - 5

Next, Walker argues that the existing parties would not be prejudiced by amendment at this time because he first notified opposing counsel of the potential for amendment during settlement negotiations that started in July 2023, and even circulated a "scaled back" version of the amended complaint to opposing counsel in September 2023. *See* Dkt. No. 33 ¶¶ 4–5; Dkt. No. 33-1 (September version of an amended complaint). The Barnett Defendants agreed to stipulate to the filing of the amended complaint that was circulated in September 2023, but HPA did not. *See* Dkt. No. 44 ¶ 3. Regardless, Walker did not file a motion for leave at that time. He instead waited until December 2023 before seeking to make additional amendments beyond those disclosed in September 2023. That Walker has apparently intended to amend the complaint since last summer highlights rather than excuses Walker's lack of diligence. Moreover, Walker does not dispute Defendants' position that adding parties and claims at this point will significantly prolong the case via additional discovery and the need for new counsel for the added Defendants to be retained and get up to speed. *See* Dkt. No. 41 at 12; Dkt. No. 43 at 5–6.

Finally, in his motion, Walker has not pointed to any recent development during the course of litigation that supports amending the complaint at this juncture, and has made no effort to demonstrate that he promptly requested leave to amend as soon as the need for amendment became apparent. Instead, he admits and indeed emphasizes that he could have drafted his original complaint to include all of the allegations and claims raised in the proposed amended complaint, but chose not to do so for personal and arguably strategic reasons. *See* Dkt. No. 31 at 11; Dkt. No. 32 ¶¶ 14–15. The Court does not find that Walker's strategic approach to seeking amendment constitutes diligence and therefore concludes that Walker has failed to establish good cause to modify the case schedule.

### III. CONCLUSION

For these reasons, the Court DENIES Plaintiff's motion for leave to amend the complaint. The Court directs the parties to meet and confer regarding case scheduling, as discussed at the February 6, 2024 oral argument. No later than February 12, 2024, the parties are ORDERED to file a joint status report as to the need for a continuance of the trial date, and if a continuance is requested, whether the parties have conflicts that would preclude a continuance to July 8, 2024.

Dated this 7th day of February, 2024.

Kymberly K. Evanson
United States District Judge