1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER WALKER,

                   Plaintiff(s),

     v.

DANIEL L. BARNETT, et al.,

                 Defendant(s).

CASE NO. C23-0163-KKE

ORDER GRANTING DEFENDANT
HEALTH PROFESSIONALS ALLIANCE'S
MOTION FOR JUDGMENT ON THE
PLEADINGS

This matter comes before the Court on a motion for judgment on the pleadings filed by Defendant Health Professionals Alliance ("HPA"). Dkt. No. 30. The Court has considered the parties' briefing, the balance of the record, and the oral argument of counsel. For the following reasons, the Court grants the motion.

## I.   BACKGROUND[1]

In 2011 Defendant Daniel Barnett ("Barnett") asked his longtime friend Plaintiff Christopher Walker to loan him money to help him finance his business, Defendant Aviara Capital Partners LLC ("Aviara"). Dkt. No. 1-1 ¶¶ 9–10. Walker withdrew money from his personal 401K account and liquidated other assets to finance a $150,000 loan.[2] *Id.* ¶ 12, Exs. A & B. Walker and

---

[1] Facts alleged in the Complaint (Dkt. No. 1-1) are assumed to be true for the purposes of this motion.

[2] Walker loaned Barnett $150,000 (Dkt. No. 1-1 ¶ 14), although the promissory note references a $200,000 loan. *See id.* at 12–20.

Barnett signed a promissory note in September 2011 ("the First Note"), which was secured by a Security Agreement pledging all of Barnett's interest in Aviara to Walker. *Id.* ¶ 13, Exs. A & B. Barnett agreed to begin making interest-only payments in February 2012, with interest accruing at 12% per annum, with the entire balance due in seven years. *Id.* ¶ 14.

Barnett ceased making timely payments after approximately a year, and the First Note went into default. Dkt. No. 1-1 ¶ 15. Under the terms of the note, upon default the outstanding balance is due immediately, with default interest at 24% per annum. *Id.* ¶ 16. Barnett continued to make sporadic payments, after which Walker updated Barnett as to the total balance owing. *Id.* ¶ 17.

In June 2015, Walker loaned Barnett another $5,000 and entered into another promissory note ("the Second Note") with Barnett and Barnett's company Defendant BE Holdings, LLC. Dkt. No. 1-1 ¶ 18. Walker agreed, via the Second Note, to consider reversing the 24% compound interest on the First Note if Barnett and BE Holdings timely: (1) paid back the Second Note, (2) paid off the outstanding accrued interest on the First Note, (3) returned to making timely monthly payments on the First Note, and (4) paid off the entire First Note within one year of signing the Second Note. *Id.* ¶ 20. Barnett satisfied the first requirement, but did not satisfy the other three. *Id.* ¶ 21. Thus, the First Note remained in default, and Barnett and BE Holdings continued to make sporadic payments on it. *Id.* ¶¶ 21–22.

In a February 2021 text message from Barnett to Walker, Barnett offered to pledge his equity in HPA to satisfy his obligation on the First Note. Dkt. No. 1-1 ¶ 24. Barnett and HPA told Walker that they would create an entity referred to as "20% Plus" to raise $1 million collateralized by HPA shares held by BE Holdings. *Id.* ¶ 25. Barnett and HPA's board chair agreed that "20% Plus (and by extension Barnett) would receive 40% of all monies raised," and that these proceeds would be used to pay the outstanding balance on the First Note. *Id.* Barnett/BE Holdings and HPA officers successfully raised money through 20% Plus, but did not use the money to

completely repay Walker on the First Note. *Id*. ¶ 26. Instead, the money raised was paid to "BE Holdings (and notably not Barnett directly, which could then be attached by Walker if Barnett would not pay it to Walker as promised by Barnett and HPA)[.]" *Id*.

In August 2021, Walker asked Barnett again to repay the money owed on the First Note, but Barnett offered various explanations as to why he could not. Dkt. No. 1-1 ¶ 28. As of December 1, 2022, Walker claims that Barnett owes Walker $1,406,427 plus attorney fees under the First Note. *Id*. ¶ 29.

Walker filed a lawsuit against Barnett, Aviara, BE Capital Partners (an LLC owned by Barnett), BE Holdings, Barnett's wife Sherri Miller Barnett, and HPA in January 2023 in King County Superior Court, and the Defendants other than HPA removed to this Court the following month. *See* Dkt. No. 1. HPA filed a motion for judgment on the pleadings in December 2023. Dkt. No. 30. That motion is now ripe for resolution.

## II.    ANALYSIS

### A.    Legal Standards.

A party is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c) when, even if all of the material facts contained in the complaint are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The facts alleged in the complaint must be construed in favor of the non-moving party. *Id*. When evaluating a Rule 12(c) motion, the court may not assess the weight of the evidence that might be offered by any party. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021).

### B.    The Court Grants HPA's Motion for Judgment on the Pleadings.

Walker's Complaint lists two claims against HPA—tortious interference with a contract and conversion—and the Court will address each in turn.

1

2

       1.   <u>HPA Is Entitled to Judgment as a Matter of Law on Walker's Claim for Tortious Interference with a Contract.</u>

3

      In Washington, a claim for tortious interference with a contract has five elements: (1) the

4

existence of a valid contractual relationship or business expectancy; (2) defendant had knowledge

5

of that relationship; (3) defendant's intentional interference induced or caused a breach or

6

termination of the relationship or expectancy; (4) defendant interfered for an improper purpose or

7

used improper means; and (5) damage resulted. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930

8

P.2d 288, 300 (Wash. 1997).  In stating his claim for tortious interference with the terms of the

First Note, Walker alleges that HPA, BE Capital, and BE Holdings

9

10

11

12

> acted in a manner which caused Barnett to further breach the terms of the First Note when HPA paid BE Holdings rather than Walker directly (or at least Barnett directly who then in turn would pay Walker) in an effort to prevent Walker from collecting monies contractually committed to be paid to Walker to reduce the balance owing under the First Note, even though sales proceeds from the equity in HPA was to be paid to Walker.

13

Dkt. No. 1-1 ¶ 38.

14

      These allegations, along with other allegations in the Complaint, are insufficient to state a

15

claim for tortious interference.  The contract at issue is the First Note, which Walker alleges Barnett

16

breached in 2013, years before HPA created 20% Plus to allegedly satisfy Barnett's debt.  Dkt.

17

No. 1-1 ¶¶ 14–16, 24.  Because the terms of the First Note had already been breached long before

18

HPA's allegedly improper conduct, HPA's alleged conduct cannot have caused a breach of the

19

First Note.  *See, e.g.*, *Berman v. Davidson Media Va. Stations, LLC*, No. 3:15-CV-00299, 2016

20

WL 775784, at *3 (E.D. Va. Feb. 26, 2016) (finding that, in dismissing a claim for tortious

21

interference with a contract, "[i]t stands contrary to basic logic that an event that occurred after the

22

breach of contract could have caused that same breach").

23

      Although Walker argues that the inferences from his allegations establish that he properly

24

pleaded a claim for tortious interference with a contract (Dkt. No. 35 at 10–11), he has not

explained how any of his allegations indicate that HPA's conduct caused a breach of the terms of the First Note, the only contract at issue. *See* Dkt. No. 1-1 ¶¶ 36–38. Moreover, any such indication would defy the timeline set out in the Complaint. Accordingly, the Court concludes that HPA is entitled to judgment as a matter of law on the claim for tortious interference with a contract.

2. HPA Is Entitled to Judgment as a Matter of Law on Walker's Conversion Claim.

Conversion is defined as "the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 609 (Wash. Ct. App. 2010) (quoting *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 18 P.3d 1144, 1147 (Wash. Ct. App. 2001)). "In some cases, money may become the subject of conversion but 'there can be no conversion of money unless it was wrongfully received by the party charged with conversion, or unless such party was under obligation to return the specific money to the party claiming it.'" *Steichen v. 1223 Spring St. Owners Ass'n*, No. 82407-4-I, 2023 WL 6973845, at *15 (Wash. Ct. App. Oct. 23, 2023) (quoting *Pub. Util. Dist. No. 1 of Lewis Cnty. v. Wash. Pub. Power Supply Sys.*, 705 P.2d 1195, 1211 (Wash. 1985)).

The Complaint alleges that HPA agreed to pay 40% of the proceeds from the sale of Barnett's/BE Holdings' HPA shares to "20% Plus (and by extension Barnett)" and that this money would then be paid to Walker on the First Note. Dkt. No. 1-1 ¶¶ 25–26. Walker alleges that because he did not receive all of the payments as promised, the Defendants "pocketed the proceeds and have thus converted them." *Id*. ¶ 43. Specifically, Walker alleges that "HPA aided and abetted in this conversion and may have even received some type of remuneration for assisting in the

conversion of the sales proceeds from Walker to Barnett and/or one of the other Converting Defendants." *Id.* ¶ 44.

HPA contends that it is entitled to judgment as a matter of law on the conversion claim because Walker has failed to allege that he owned any HPA shares registered to Barnett or BE Holdings, such that HPA converted any money rightfully owned by Walker by transferring the proceeds of those shares to Barnett/BE Holdings.  Dkt. No. 30 at 8.

Indeed, although the Complaint alleges that Walker was entitled to payment via the 20% Plus arrangement, it does not allege that the shares or the proceeds from their sale were his in the first place.  Instead, Walker alleges that HPA and Barnett agreed that *Barnett* would use 40% of the money raised via 20% Plus to pay down (or pay off) the debt on the First Note.  Dkt. No. 1-1 ¶ 25.  Walker does not allege that the proceeds were ever his to begin with, and the Complaint alleges the opposite: that the shares were not his directly, but that Barnett had promised to pay him out of the proceeds of their sale.  *Id.*  Under these circumstances, where Walker has not claimed to have owned the money that HPA transferred to Barnett/BE Holdings, Walker cannot maintain a conversion claim against HPA.

### III.   CONCLUSION

For these reasons, the Court GRANTS HPA's motion.  Dkt. No. 30.  Plaintiff's claims against HPA are DISMISSED with prejudice and the clerk is directed to terminate HPA as a Defendant in this matter.

Dated this 14th day of February, 2024.

Kymberly K. Evanson
United States District Judge